**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| GGC INTERNATIONAL LIMITED,<br><br>                                          Plaintiff,<br><br>v.<br><br>ROGER VER,<br><br>                                          Defendant. | Case No. 1:23-cv-01560 (GHW)<br><br>**RESPONSE TO**<br>**ORDER TO SHOW CAUSE** |

On January 21, 2023, Plaintiff GGC International Limited, ("GGCI"), commenced a civil action in the Supreme Court of the State of New York, County of New York, by filing a Summons with notice naming Mr. Roger Ver as defendant. The action is captioned GGC International Limited v. Roger Ver, Index No. 650439/2023 (the "State Court Action").

On February 24, 2023, Mr. Ver filed a Notice of Removal with the United States District Court for the Southern District of New York. Thereafter, the Court Ordered Mr. Ver to Show Cause by March 6, 2023 as to why this action should not be dismissed for lack of subject matter jurisdiction.

Mr. Ver, by and through his attorneys, Kelman PLLC, hereby responds as follows.

In *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court abrogated the "doing business" test and held that jurisdiction can only extend over a foreign entity that is "at home" in the state. Absent an "exceptional case," a company is only "at home" in (1) its state of incorporation or (2) the state in which it maintains a principal place of business. (*Id.*)

Since *Daimler*, additional decisions by the Second Circuit and New York Court of Appeals have focused on the magnitude of activities taking place within New York, when compared to the non-New York activities of an entity. (See, *Gucci America, Inc. v. Weixing Li*,

768 F.3d 122 (2d Cir. 2014); see also, *Aybar v. Aybar*, 169 A.D.3d 137, 145-46 (N.Y. App. Div. 2019)).

A corporation's principal place of business under § 1332 is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." (*Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010)). Pursuant to *Hertz*, this "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center.'" (*Id.* at 93; cited by *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016))

For the reasons stated herein, while GGCI was formed under the laws of the British Virgin Islands, at all relevant times its principal place of business was 250 Park Avenue South, 5th Floor, New York, New York 10013.

During the parties' relationship Mr. Ver and GGCI entered into over 125 individual option or rollover transactions. Each of those transactions was governed by a Master Confirmation Agreement. On June 15, 2020, the parties entered into a "Master Confirmation Agreement for Roger Ver" (hereinafter "Master Confirmation") (See, Exhibit A to Affirmation of Michael D. Handelsman, dated March 6, 2023) (hereinafter "Handelsman Aff."). This agreement was limited to Bitcoin Cash Call Transactions only.

Looking to conduct activity in other currencies as well, the Master Confirmation was replaced on June 22, 2020, when the parties entered into an "Amended and Restated Master Confirmation Agreement for Virtual Currency Put and Call Options Transactions" (hereinafter "Restated Master Confirmation").[1] (See, Exhibit B to Handelsman Aff.) This agreement was designed to cover put and call option transactions in Bitcoin, Etherum, and any other currency

---

[1]   It appears as though the parties affixed their signatures to a sample confirmation attached to the Restated Master Agreement. Neither party has claimed that the Restated Master Agreement is somehow unenforceable.

that fell under the broad definition of virtual currencies contained therein, including Bitcoin Cash.

One representation made in both the Master Confirmation and Restated Master Confirmation was that the terms of those agreements apply to all transaction made pursuant to the agreements unless an "Addendum or a confirmation of a Virtual Currency Transaction specifies that this Master Confirmation does not apply." (See, Handelsman Aff., Exs. A and B at p. 1).

Crucially, both the Master Confirmation and Restated Master Confirmation contain a representation by GGCI that it *"is not a multibranch party and acts from its office in New York."* (See, Handelsman Aff., Ex. A at p. 6; Ex. B at p. 7) The implication of this representation is that GGCI has a single office and that office is in New York.

This representation was made, and reaffirmed, on no less than 125 different occasions by GGCI. Further, many of the confirmations reaffirming this statement were signed by the Director of GGCI, Michael Moro.

Upon information and belief, Mr. Moro served as either the CEO or Director of GGCI from the beginning of the parties' relationship, through August 2022. In addition, Mr. Moro was also the CEO and/or Director of Genesis Global Trading, a related entity that also operates out of the same New York office as GGCI.

Given its single office location - the office at 250 Park Avenue South - it is axiomatic that the "center of direction, control, and coordination, i.e., the nerve center," or principal place of business, had to be that office. It would strain credulity to believe that an entity with a single office in New York is not "at home" in New York state. All of their employees — the account

representatives with whom Mr. Ver interacted, GGCI's executives, directors, and legal counsel — worked out of that New York office.

Mr. Ver was forced to include two addresses for GGCI in his Notice of Removal as a result of Plaintiff's decision to file a Summons and Notice only with the State of New York without a Complaint. As a result, Plaintiff has not made any statements as to where its principal place of business is located. As such, out of an overabundance of caution, Mr. Ver elected to include both addresses.

However, it remains abundantly clear that despite being formed under the laws of the British Virgin Islands, GGCI's principal place of business, or operational nerve center, is its New York office.

Further, while Mr. Ver has seen a draft complaint, given that no Complaint has yet been filed or served, Mr. Ver is left with the unenviable task of guessing as to what claims GGCI will actually be making in this case. Mr. Ver fully expects that his response to the Complaint, whenever it is eventually filed and served, will include claims alleging violations of US federal law, thereby providing federal question subject matter jurisdiction, in addition to the presence of diversity jurisdiction.

For these reasons, pursuant to 28 U.S.C. § 1332, GGCI is deemed a citizen of New York and there is complete diversity between the parties. In addition, once a Complaint is actually filed, it is likely, if not a guarantee, that federal question jurisdiction will attach as a result of Mr. Ver's response to same.

**WHEREFORE**, Mr. Ver respectfully requests that this matter not be dismissed for lack of subject matter jurisdiction.

Dated:  New York, New York
        March 6, 2023

**KELMAN PLLC**

s/:  Daniel J. Kelman
Daniel J. Kelman
1501 Broadway, Suite 2972
New York, New York 10036
Telephone: (212) 380-3818
daniel@kelman.law

*Attorneys for Defendant Roger Ver*