# Exhibit B

# Genesis

**Amended and Restated Master Confirmation Agreement for
Virtual Currency Put and Call Option Transactions
Dated as of 2020/06/22 (the "Effective Date")
between
GGC International Limited ("Party A") and
Roger Ver ("Party B")**

The parties wish to facilitate the process of entering into and confirming:

put and call option transactions in respect of Bitcoin ("**BTC**"), Ether ("**ETH**") and other Virtual Currency (defined below) having similar characteristics (each, a "**Virtual Currency Transaction**" and collectively, "**Virtual Currency**")

and accordingly agree as follows:

**1.     Application; Contractual Framework.**

(a)     This Master Confirmation Agreement for Virtual Currency Transactions ("**Master Confirmation**") shall apply to each Virtual Currency Transaction (each, a "**Transaction**") entered into between Party A and Party B on or after the Effective Date, unless the Addendum or a confirmation of a Virtual Currency Transaction specifies that this Master Confirmation does not apply.

(b)     As of the date hereof, Party A and Party B will be deemed to enter into (i) an ISDA master agreement in the form of the 2002 ISDA Master Agreement (Multicurrency – Cross Border) published by ISDA (the "**Form ISDA Master Agreement**") without any Schedule, except for the elections and modifications that are provided in Paragraph 7 of this Master Confirmation and (ii) an ISDA credit support agreement in the form of the 1994 ISDA Credit Support Annex (the "**Form ISDA CSA**") without any paragraph 13 thereof, except for the elections and modifications that are provided in Paragraph 8 of this Master Confirmation. In the event of any inconsistency between the provisions of the Form ISDA Master Agreement or the Form ISDA CSA and this Master Confirmation, this Master Confirmation will prevail for the purpose of any Transaction.

**2.     Definitions**.

(a)     The definitions and provisions contained in (i) the 2006 ISDA Definitions as published by the International Swaps and Derivatives Association, Inc. ("**ISDA**") (the "**2006 Definitions**") and (ii) the 1998 FX and Currency Option Definitions as published by ISDA, the Emerging Markets Trading Association and the Foreign Exchange Committee (the "**FX Definitions**" and, together with the 2006 Definitions, the "**Definitions**") are incorporated by reference into this Master Confirmation except as expressly provided herein. In the event of any inconsistency between the Definitions and this Master Confirmation, this Master Confirmation will govern for the purposes of each Transaction. In the event of any inconsistency between the 2006 Definitions and the FX Definitions, the FX Definitions will govern for the purposes of each Transaction.

(b)     For the purpose of the FX Definitions, each Transaction constitutes either a Deliverable Transaction or Non-deliverable Transaction. For the purpose of the 2006 Definitions, each Transaction constitutes a Swap Transaction.

(c)     Notwithstanding anything to the contrary in this Master Confirmation Agreement or any Transaction, Annex A of the FX Definitions, and any references to Annex A in Section 4.2 of the FX Definitions shall not be applicable to the Transaction, and the FX Definitions shall be read as if any reference to Annex A was removed from the FX Definitions.

**3.     Transaction Confirmation**: The parties shall confirm the Economic Terms (as defined in paragraph 4 below) of each **Virtual Currency Transaction** in a Confirmation (each such Confirmation, a "**Transaction Confirmation**"). Each Transaction Confirmation may be executed and delivered in counterparts (including by facsimile transmission), or an exchange of e-mails. Each Transaction Confirmation shall be deemed to incorporate and be subject to all of the terms of this Master Confirmation. This Master Confirmation, together with each Transaction Confirmation, constitutes a "Confirmation" for purposes of the Form ISDA Master Agreement. Each Transaction Confirmation shall be deemed to incorporate the general terms for all Transactions specified in paragraph 5 and the disruption fallbacks and adjustment conventions specified in paragraph 6.

**4.     Virtual Currency Transaction Economic Terms:**

| | |
|---|---|
| Trade Date: | As specified in the Transaction Confirmation. |
| Reference Currency: | For any transaction, BTC, ETH or another applicable Virtual Currency as specified in the Transaction Confirmation, each of which shall be deemed to be a "currency" for the purpose of the Definitions. |
| Currency Option Type: | Put or Call, as specified in the Transaction Confirmation. |
| Call Currency | Reference Currency specified in the Transaction Confirmation. |
| Call Currency Amount: | The amount of the Reference Currency (which may be a fractional amount) as specified in the Transaction Confirmation. |
| Strike Price: | The amount of USD per 1.00 whole unit of the Reference Currency as specified in the Transaction Confirmation. |
| Expiration Date: | As specified in the Transaction Confirmation. |
| Expiration Time: | As specified in the Transaction Confirmation. |
| Settlement Date: | As specified in the Transaction Confirmation. |
| Premium: | USD Amount as specified in the Transaction Confirmation. |
| Premium Payment Date: | Trade Date |
| Account Details: | As specified in the Transaction Confirmation. |

**5.     General Terms**:

| | |
|---|---|
| Transaction Type: | Currency Option, Call or Put as specified in the Transaction Confirmation |
| Settlement: | As specified in the Transaction Confirmation |

**Genesis**

| | |
|---|---|
| Currency Option Style: | As specified in the Transaction Confirmation |
| Seller: | As specified in the Transaction Confirmation. |
| Buyer: | As specified in the Transaction Confirmation. |
| Settlement Currency: | USD |
| Settlement Rate: | Means the exchange rate stated on the Fixing Reference expressed as the USD amount per 1.00 of the Reference Currency on any Valuation Date. |
| Fixing Reference: | As specified in the Transaction Confirmation. |
| Calculation Agent Determination of Settlement Rate: | Applicable |
| Business Day: | Any day on which commercial banks are open for business (including dealings in foreign exchange and foreign currency deposits) in New York. |
| Business Day Convention: | Following |
| Calculation Agent: | Party A |

**6.   Disruption Events and Fallbacks:**

| | |
|---|---|
| Event Currency: | The Virtual Currency specified in the Transaction Confirmation |
| Non-Event Currency: | USD |
| Disruption Event(s): | |
| (a) General Inconvertibility: | Applicable. |
| Disruption Fallback: | No-Fault Termination |
| (b) General Non-Transferability: | Applicable. |
| Disruption Fallback: | No-Fault Termination |
| (c) Calculation Agent Determination of Disruption Event: | Applicable |
| Disruption Fallback(s): | |
| | Where settlement is Deliverable (as specified in the Transaction Confirmation, the following provision regarding Fallback Reference Price shall apply: |
| (a) Fallback Reference Price: | The Calculation Agent will determine the |

Reference: **Error! Reference source not found.** Roger Ver
GGC INTERNATIONAL LIMITED

3 / 15

Settlement Rate for the Transaction on the relevant Exercise Date (or, if different, the day on which rates for that Exercise Date would, in the ordinary course, be published or announced) pursuant to the first of the alternate pricing sources or methodologies specified below that is not subject to Price Source Disruption:

First,

    (a) In the case of BTC, the Bloomberg Crypto Fixings (CFIX) available under Bloomberg Ticker: XBT CFIX Currency.
    (b) In the case of ETH, the Bloomberg Crypto Fixings (CFIX) available under Bloomberg Ticker: XET CFIX Currency.
    (c) In the case of another Virtual Currency, if not available on Bloomberg CFIX, a commonly utilized alternate pricing source, as specified in the Transaction Confirmation.

Second,

    (a) In the case of BTC, Tradeblock XBX Index rate;
    (b) In the case of ETH, Tradeblock ETX Index rate;
    (c) In the case of another Virtual Currency, a commonly utilized alternate pricing source that is not subject to Price Source Disruption.

Third, the Calculation Agent Adjustment of the Settlement Rate if no Adjustment Event has occurred or is continuing, or the Modified Calculation Adjustment of the Settlement Rate if an Adjustment Event has occurred and is continuing and Party A has elected to apply Modified Calculation Agent Adjustment as described below under "Adjustment Events."

Calculation Agent Adjustment Means that the Calculation Agent shall determine the Settlement Rate by taking into consideration all available information that in good faith it deems relevant.

Modified Calculation Agent Adjustment    Means that the Calculation Agent shall in its sole discretion either:

(1) make such adjustment to the exercise, settlement, payment or any other terms of the Transaction as the Calculation Agent determines

# Genesis

|  |  |
|---|---|
|  | appropriate to account for the economic effect on the Transaction of any Adjustment Event (including adjustments to account for changes in volatility, expected dividends or other distributions, or liquidity relevant to the Reference Currency or to the Transaction), and determine the effective date of that adjustment; or |
|  | (2)     if the Calculation Agent determines that no adjustment that it could make under the previous clause (1) will produce a commercially reasonable result, the relevant Transaction shall terminate, in which case "Cancellation and Payment" will be deemed to apply. |
| Cancellation and Payment | Means the Transaction will be cancelled as of the effective date of the Adjustment Event (as determined by the Calculation Agent) and any payment to be made by one party to the other shall be the Calculation Agent Adjustment Amount. |
| Adjustment Events: | Upon the occurrence of a Potential Adjustment Event that has a 5% or greater effect on the theoretical value of (a) one unit of the Reference Currency or (b) the Transaction any time during the 14 calendar day period immediately following the occurrence of such Potential Adjustment Event (an "**Adjustment Event**"), Party A may in its sole discretion elect Modified Calculation Agent Adjustment. For purposes of determining whether an Adjustment Event has occurred, the theoretical value of one whole unit of the Reference Currency, as applicable, at any time during the 14 calendar day period immediately following the occurrence of a Potential Adjustment Event shall be compared to the value of one whole unit of the Reference Currency, as applicable, as of the point in time immediately prior to the occurrence of such Potential Adjustment Event, with reference to the Settlement Rate at such time. |
| Potential Adjustment Event: | "Potential Adjustment Event" means any of the following: |
|  | (1)     a subdivision, consolidation or reclassification of the Reference Currency, or any similar action in respect of the underlying protocol of the Reference Currency. |
|  | (2)     a free distribution (including but not limited to an "airdrop") or dividend of the Reference |

Reference: **Error! Reference source not found.** Roger Ver
GGC INTERNATIONAL LIMITED

5 / 15

# Genesis

|  |  |
|---|---|
|  | Currency, any other Virtual Currency, cash, or any other asset to existing holders of such Virtual Currency by way of bonus; |
|  | (3)   a change in the operating rules of the underlying protocol of the Reference Currency (i.e., a "fork"), capitalization or otherwise; |
|  | (4)   a swap, migration, conversion or exchange of the Reference Currency into or for another asset (which, for the avoidance of doubt, does not include the Reference Currency); |
|  | (5)   the imposition of, change in or removal of an excise, sales, use, value-added, transfer, stamp, documentary, recording or similar tax on, or measured by reference to, the Reference Currency or any Virtual Currency into which or for which it may be exchanged (other than a tax on, or measured by reference to overall gross or net income) by any government or taxation authority after the Trade Date, if the direct effect of such imposition, change or removal is to raise or lower the Settlement Rate on the Settlement Date from what it would have been without that imposition, change or removal; |
|  | (6)   A generalized regulatory enforcement initiative by one or more government authorities on Virtual Currency exchanges, miners or others focused on price manipulation, criminal activity and like activity or effects; or |
|  | (7)   Any other event that has a diluting or concentrative effect on the theoretical value of (a) one unit of the Reference Currency or (b) the Transaction. |
| Virtual Currency | Any type of digital unit (including the Reference Currency) that is used as a medium of exchange or a form of digitally stored value, including but not limited to digital units of exchange that (A) have a centralized repository or administrator, (B) are decentralized and have no centralized repository or administrator, and/or (C) may be created or obtained by computing or manufacturing effort. |

[Section 7 appears on next page]

Reference: **Error! Reference source not found.** Roger Ver
GGC INTERNATIONAL LIMITED

6 / 15

# Genesis

7. **Form ISDA Master Agreement:**

(a) This Master Confirmation shall supplement, form part of, and be subject to the Form ISDA Master Agreement, as deemed entered into as of the date hereof in accordance with Paragraph 1 (b). All provisions contained in or incorporated by reference in that Form ISDA Master Agreement will govern this Master Confirmation except as expressly modified below. Unless the parties subsequently choose to execute and deliver a Form ISDA Master Agreement with specific modifications, this Master Confirmation, together with all other documents referring to the Form ISDA Master Agreement confirming the Reference Currency Transactions entered into between the parties (notwithstanding anything to the contrary in a Transaction Confirmation), shall supplement, form a part of, and be subject to, an agreement in the form of the Form ISDA Master Agreement in accordance with Paragraph 1 (b), except for the following elections.

   i. <u>Governing Law</u>: New York.

   ii. <u>Termination Currency</u>: U.S. Dollars.

   iii. <u>Multiple Transaction Payment Netting</u>: Applicable.

   iv. <u>Specified Entities of Party B</u>: All Affiliates.

   v. <u>Process Agent</u>. For the purposes of Section 13(c) of the Form ISDA Master Agreement, Party A appoints as its Process Agent: Genesis Global Trading, Inc. and Party B appoints as its Process Agent itself.

   vi. <u>Offices</u>: Party A is not a multibranch party and acts from its office in New York. Party B is not a multibranch party and acts from its office in Saint Kitts and Nevis.

   vii. <u>Credit Support Document</u>: The deemed credit support annex as described in paragraph 8 Margin.

   viii. <u>Payee Tax representations of Party B</u>: Party B represents that it is a foreign person (as that term is used in section 1.604-4(a) of the U.S. Treasury Regulations) for U.S. federal income tax purposes and "exempt" within the meaning of sections 1.6041-3(p) and 1.6049-4(c) of the U.S. Treasury Regulations from information reporting on U.S. Internal Revenue Service Form 1099 and backup withholding.

   ix. <u>Documents to be Delivered by Party B prior to the first Transaction</u>:

   1. Identification as per onboarding process.

   2. IRS Form W-8ECI (or any successor thereto) in duplicate, including appropriate attachments, that eliminates U.S. federal withholding tax and backup withholding tax on payments under this Agreement.

(b) For purposes of "Withholding Tax imposed on payments to non-US counterparties under the United States Foreign Account Tax Compliance Act, or FATCA:

   (i) "Indemnifiable Tax" as defined in Section 14 of the Form ISDA Master Agreement shall not include any U.S. federal withholding tax imposed or collected pursuant to Sections 1471 through 1474 of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), any current

**Genesis**

or future regulations or official interpretations thereof, any agreement entered into pursuant to Section 1471(b) of the Code, or any fiscal or regulatory legislation, rules or practices adopted pursuant to any intergovernmental agreement entered into in connection with the implementation of such Sections of the Code (a "**FATCA Withholding Tax**"),

(ii) for the avoidance of doubt, a FATCA Withholding Tax is a Tax the deduction or withholding of which is required by applicable law for the purposes of Section 2(d) of the Form ISDA Master Agreement, and

(iii) if the parties each independently decide to adhere to any ISDA Protocol on FATCA Withholding Tax, upon effective adherence by both parties, the provisions of such Protocol shall supersede the foregoing provision) on the Trade Date of the first such Transaction between us. Additionally, the parties agree that the definitions and provisions contained in the Attachment to the 2010 Short Form HIRE Act Protocol published by ISDA on November 30, 2010 are incorporated into and apply to this Agreement as if set forth in full herein. The definition of "Indemnifiable Tax" shall not include any Dividend Equivalent Tax.

(c) For the avoidance of doubt, any Transaction entered into prior to the execution of the Form ISDA Master Agreement and this Master Confirmation shall be subject to the terms of such ISDA Form and Master Confirmation as though such Transaction had been entered into after the parties had executed such ISDA Form and Master Confirmation between them.

**8. Margin; Form ISDA CSA**

(a) This Master Confirmation shall supplement, form part of, and be subject to the Form ISDA CSA, as deemed entered into as of the date hereof in accordance with Paragraph 1 (b). All provisions contained in or incorporated by reference in that Form ISDA CSA will govern this Master Confirmation except as expressly modified below. Unless the parties subsequently choose to execute and deliver a Form ISDA CSA with specific modifications, this Master Confirmation shall constitute a credit support agreement, and together with all other documents referring to the Form ISDA Master Agreement and the Form ISDA CSA confirming Transactions entered into between the parties (notwithstanding anything to the contrary in a Transaction Confirmation), shall supplement, form a part of, and be subject to, an agreement in the form of the Form ISDA CSA in accordance with Paragraph 1 (b), with the following Paragraph 13 elections:

(1) <u>Eligible Collateral</u>:

    a. Party A: Not applicable

    b. Party B:

        i. USD Cash; valuation percentage 100%;

        ii. Reference Currency; valuation percentage 100% at Spot Rate.

        iii. Additional categories of Eligible Collateral as set forth in the related Transaction Confirmation.

(2) <u>Independent Amount</u>:

    a. Party A: None;

# Genesis

(3) <u>Threshold</u>:

    b.    Party B: As set forth in the related Transaction Confirmation

(3) <u>Threshold</u>:

    a.    Party A: Infinity

    b.    Party B: As set forth in the related Transaction Confirmation

(4) <u>Minimum Transfer Amount</u>

    a.  As set forth in the related Transaction Confirmation

(5) <u>Rounding</u>: The Delivery Amount and the Return Amount shall be rounded down to the nearest integral multiple of USD100.

(6) <u>Conditions Precedent and Secured Party's Rights and Remedies</u>: The Termination Event for Illegality will be a «Specified Condition» for Party B, which will be the Affected Party.

(7) <u>Holding and Using Posted Collateral</u>. Party A and its Custodian shall be entitled to hold Posted Collateral pursuant to Paragraph 6 of the Form ISDA CSA.

**9. Relationship Between the Parties**

    a.    <u>No Reliance, etc</u>. Each party represents that (i) it is entering into the Transaction evidenced hereby as principal (and not as agent or in any other capacity); (ii) neither the other party nor any of its agents are acting as a fiduciary for it; (iii) it is not relying upon any representations except those expressly set forth in the Agreement or this Confirmation; (iv) it has not relied on the other party for any legal, regulatory, tax, business, investment, financial, and accounting advice, and it has made its own investment, hedging, and trading decisions based upon its own judgment and upon any view expressed by the other party or any of its agents; and (v) it is entering into each Transaction with a full understanding of the terms, conditions and risks thereof and it is capable of and willing to assume those risks.

    b.    <u>No Regulated Swaps Entity</u>. Each party represents that (i) it is not provisionally registered with the United States Commodity Futures Trading Commission (the "**CFTC**") as a swap dealer or major swap participant (each as defined in the United States Commodity Exchange Act ("**CEA**") and rules promulgated thereunder) and is not a U.S. Person pursuant to applicable CFTC guidance (each, a "**DF Swap Entity**"), (ii) it is not guaranteed by a DF Swap Entity, (iii) it is not a financial counterparty for purposes of Regulation (EU) No 648/2012 on OTC derivatives, central counterparties and trade repositories ("EMIR") and (iv) it has negotiated the Transaction exclusively from the offices described in paragraph 7 above.

    c.    <u>Eligible Contract Participant</u>. Each party represents that it is an "eligible contract participant" as defined in the CEA and rules and other guidance of the CFTC promulgated thereunder.

    d.    <u>No Retail Commodity Transaction</u>. Party B represents that no Transaction is a "retail commodity transaction" as defined in Section 2(c)(2)(D) of the CEA.

    e.    <u>Dodd-Frank Reporting</u>. Party A will act as the "reporting counterparty" as required by Parts 43, 45 and 46 of Title 17, Chapter 1 of the CFTC's regulations for all Transactions under this Agreement. Party B appoints Party A to perform the reporting obligations on its behalf and Party A accepts that appointment.

    f.    <u>Securities Law Matters</u>: To the extent the Virtual Currency applicable to a Virtual Currency Transaction is considered to be a security as defined in the Securities Act of

# Genesis

1933, Party B represents that the amount of Virtual Currency that is subject to a Transaction is not subject to any restrictions on transfer under the Securities Act and SEC regulations and interpretations thereunder.

    g.    <u>USA PATRIOT Act Notice</u>. Party A hereby notifies Party B that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "**Act**"), it is required to obtain, verify and record information that identifies Party B, which information includes the name and address of Party B and other information that will allow Party A to identify Party B in accordance with the Act.

    h.    <u>Selected Risks of Virtual Currency Options</u>. PARTY B ACKNOWLEDGED THAT THE RISK OF LOSS IN TRADING VIRTUAL CURRENCIES SUCH AS BTC OR ETH CAN BE SUBSTANTIAL AND, THEREFORE, PARTY B HAS CAREFULLY CONSIDERED WHETHER SUCH TRADING IS APPROPRIATE FOR IT IN LIGHT OF ITS CIRCUMSTANCES AND FINANCIAL RESOURCES. IT IS AWARE OF THE FOLLOWING RISKS OF VIRTUAL CURRENCY TRADING:

    i.    The volatility and unpredictability of the price of Virtual Currency relative to fiat currency may result in significant loss over a short period of time. Certain virtual currencies have experienced daily price volatility of more than 20%. This could result in an Adjustment Event under a Transaction.

    ii.    The risk of losing one's entire investment increases as a Call Option goes out of the money and as expiration nears.

    iii.    The Reference Currency is not legal tender, is not backed by the government, and accounts and value balances are not subject to Federal Deposit Insurance Corporation or Securities Investor Protection Corporation protections.

    iv.    Legislative and regulatory changes or actions at the state, federal, or international level may adversely affect the use, transfer, exchange, and value of Virtual Currency including the Reference Currency.

    v.    Transactions in the Reference Currency or other Virtual Currency may be irreversible, and, accordingly, losses due to fraudulent or accidental transactions may not be recoverable.

    vi.    Some Virtual Currency transactions shall be deemed to be made when recorded on a public ledger, which is not necessarily the date or time that the customer initiates the transaction.

    vii.    The value of the Reference Currency or other Virtual Currency may be derived from the continued willingness of market participants to exchange fiat currency or other Virtual Currency for it, which may result in the potential for permanent and total loss of value of a particular Virtual Currency (such as the Reference Currency) should the market for that Virtual Currency disappear.

    viii.    There is no assurance that a person who accepts a Virtual Currency as payment on any Trade Date or Exercise Date will continue to do so in the future.

    ix.    The nature of Virtual Currency may lead to an increased risk of fraud or cyber-attack. A cybersecurity event could result in a substantial, immediate and irreversible loss for market participants that trade virtual currencies. Even a minor cybersecurity event in a Virtual

# Genesis

                Currency is likely to result in downward price pressure on that product and potentially other Virtual Currencies.

      x.      The ability to participate in forks could also have implications. For example, one could experience losses if one hold Virtual Currency position through an exchange that does not participate in a fork that creates a new product.

      xi.      PARTY A AND ITS CUSTODIAN MAY BE SUBJECT TO ALL OF THESE RISKS WITH RESPECT TO VIRTUAL CURRENCY HELD AS COLLATERAL FOR ANY TRANSACTION.

      xii.      VIRTUAL CURRENCY SPOT MARKETS ARE NOT REGULATED BY THE COMMODITY FUTURES TRADING COMMISSION. One should consult an attorney, accountant and/or financial advisor and sufficiently understand the Virtual Currency markets and risks and carefully consider whether Virtual Currency is appropriate for one in light of their own financial circumstances.

      i.      <u>Entire Agreement</u>. This Agreement, including all annexes and appendices hereto, embodies the entire agreement and understanding of the parties hereto in respect of the transactions contem¬plated by this Agreement and supersedes all prior master confirmation agreements, contracts, representations, warranties, promises, covenants, arrangements, communications, and understandings, oral or written, express or implied, between or among the parties with respect to the subject matter hereof, including, without limitation, the two master confirmation agreements dated as of June 15, 2020 between the parties for Bitcoin Cash Put Transactions and Bitcoin Cash Call Transactions, respectively, each of which agreements shall be deemed null and void, and of no further force or effect whatsoever following the date hereof.

      [Signatures appear on next page]

DocuSign Envelope ID: 87C8D57E-86D6-446A-9F3A-95CB001ACB6D

# Genesis

In witness whereof, Party A and Party B have executed this Master Confirmation as of the date first written above.

**Party A**

**GGC International Limited**

By:_____
   Name: Michael Moro
   Title: CEO

**Party B**

By:_____
   Roger Ver

Reference: **Error! Reference source not found.** Roger Ver
GGC INTERNATIONAL LIMITED

12 / 15

# Genesis

**Annex 1**
**Form of Transaction Confirmation**

**Transaction Confirmation for Virtual Currency Option Transactions**
Dated as of YYYY/MM/DD (the "Trade Date")
between
GGC International Limited ("Party A") and
Roger Ver ("Party B")
under the Amended & Restated Master Confirmation between the parties
dated as of 2020/06/22 (the "Effective Date")

**Transaction Terms:**

| | |
|---|---|
| Buyer: | [Party A/Party B] |
| Seller: | [Party A/Party B] |
| Currency Option Style: | [European/American/Bermuda] |
| Currency Option Type: | [Put/Call] |
| Settlement: | [Deliverable/Non-deliverable] |
| Reference Currency | [BTC] [ETH] [other] |
| [Put/Call] Currency | Reference Currency |
| [Put/Call] Currency Amount: | [■] Units of the Reference Currency |
| Strike Price: | USD [___] per 1.00 Unit of the Reference Currency |
| Expiration Date: | [__ ___ 202_] |
| Expiration Time: | [4:00 AM/PM (local time in New York, New York)] |
| Settlement Date: | Expiration Date |
| Premium: | USD [_____] |
| Premium Payment Date: | Trade Date |
| Fixing Reference: | [_____] |

**Disruption Fallbacks**

[Fallback Reference Price

Settlement Rate[1]: The Bloomberg Crypto Fixings (CFIX) applicable to the Event Currency.]

---

[1] Include only for non-BTC/ETH trades

Reference: **Error! Reference source not found.** Roger Ver
GGC INTERNATIONAL LIMITED

13 / 15

# Genesis

| | |
|---|---|
| Event Currency: | [Reference Currency] |

### A. Margin

| | |
|---|---|
| Party B Independent Amount | [USD 0] |
| Party B Threshold | [USD 0] |
| [Notes on posting of margin, if any] | [     ] |
| Minimum Transfer Amount | USD [100,000] |
| [Eligible Collateral Add'l Cat. | Reference Currency] |

### B. Account Details:

| | |
|---|---|
| Party A: | As per trade execution |
| Party B: | As per onboarding information |

[Signatures appear on next page]

Reference: **Error! Reference source not found.** Roger Ver
GGC INTERNATIONAL LIMITED

14 / 15

# Genesis

In witness whereof, Party A and Party B have executed this Transaction Confirmation as of the Trade Date first written above.

**Party A**

**Genesis Global Capital International Ltd.**

By: _/s/ Michael Moro_
—705B2FF45937490
Name: Michael Moro
Title: CEO

**Party B**

By: _/s/ Roger Ver_
—18A112E39A55427...
Name: Roger Ver